PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL DOWEY, | ) | |
| | ) | CASE NO. 5:17cv2489 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** |

An Administrative Law Judge ("ALJ") denied Plaintiff Michael Dowey's claim for disability insurance benefits after hearings held on June 30, 2016, and August 23, 2016, in the above-captioned case. ECF No. 10 at PageID#: 64. That decision became the final determination of the Commissioner of Social Security when the Appeals Council denied the request to review the ALJ's decision. *Id.* at PageID#: 48. Plaintiff sought judicial review of the Commissioner's decision, and the Court referred the case to Magistrate Judge David A. Ruiz for preparation of a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(1). After both parties filed briefs, the magistrate judge submitted a Report and Recommendation reasoning that the Commissioner's decision that Plaintiff is not disabled should be affirmed. *See* ECF No. 13. Plaintiff filed an Objection to the Report and Recommendation. ECF No. 14. The Government filed a Response. ECF No. 15. For the reasons that follow, the Court adopts the Report and Recommendation of the Magistrate Judge

(5:17cv2489)

and affirms the decision of the Commissioner of Social Security.

## I. Standard of Review

When a magistrate judge submits a Report and Recommendation, the Court is required to conduct a *de novo* review of the portions of the Report and Recommendation to which an appropriate objection has been made. 28 U.S.C. § 636(b). Objections must be specific, not general, in order to focus the court's attention upon contentious issues. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). The primary issue then becomes whether substantial evidence supports the Commissioner's decision. The Court's review of the Commissioner's decision is limited to determining whether substantial evidence, viewing the record as a whole, supports the findings of the administrative law judge. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978); *Bartyzel v. Commr of Soc. Sec.*, 74 F. App'x 515, 522 23 (6th Cir. 2003). Substantial evidence is more than a mere scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Besaw v. Sec'y of Health and Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (per curiam).

If substantial evidence supports the Commissioner's decision, a reviewing court must affirm the decision even if it would decide the matter differently. *Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam)). Moreover, the decision must be affirmed even if substantial evidence would also support the opposite conclusion. *Mullen v. Bowen*, 800 F.2d

(5:17cv2489)

535, 545 (6th Cir. 1986) (en banc). This standard "allows considerable latitude to administrative decisionmakers. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Id.* (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). In determining, however, whether substantial evidence supports the ALJ's findings in the instant matter, the Court must examine the record as a whole and take into account what fairly detracts from its weight. *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court must also consider whether the Commissioner employed the proper legal standards. *Queen City Home Health Care Co. v. Sullivan*, 978 F.2d 236, 243 (6th Cir. 1992).

To establish disability under the Social Security Act, a claimant must show that he is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). That conclusion is based on a five-step, sequential analysis mandated by regulation:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

3

(5:17cv2489)

>The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).

## II. Procedural History and Medical Evidence

The ALJ denied Plaintiff's application at Step Two of that analysis, concluding that the record failed to establish that Plaintiff suffered a "severe . . . impairment" or "combination of impairments." ECF No. 10 at PageID#: 69-70. He reasoned that, "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the evidence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; *i.e.*, medical signs and laboratory findings." *Id.* at PageID#: 69. Because the ALJ did not observe objective any medical records produced during or around the time period between the alleged onset of disability (September 15, 2011) and the date last insured (March 31, 2012), he concluded that Plaintiff had failed to meet his burden at Step Two. *Id.* at PageID#: 70.

The ALJ pointed out that, although Plaintiff had undergone "amputation of his left hand and distal forearm in 1992," he nevertheless "did not discernibly treat for this, or any other condition, for lengthy periods, precedent to his alleged onset date [September 15, 2011], or subsequent to his date last insured [March 31, 2012]." *Id.* "Still, the deciding and conclus[ive] factor in this claim is that I have only the claimant's statements as evidence, and 20 C.F.R. 404.1528 makes clear that the claimant's ". . . statements alone are not enough to establish that there is a physical or mental impairment." *Id.* This conclusion mirrored a December 2014

4

(5:17cv2489)

medical examination determination: "As a result" of a 14-year gap in medical evaluation, "there is insufficient evidence to make a determination on [Plaintiff's] disability claim." *Id.* at PageID#: 133.

Before the magistrate judge, Plaintiff argued, "The Administrative Law Judge's conclusion lacked the support of substantial evidence in finding that Plaintiff had no medically determinable impairments." ECF No. 11 at PageID#: 413. He pointed out that the Step Two severity requirement is a "*de minimis* hurdle," to be "employed as an administrative convenience to screen out claims that are 'totally groundless' from a medical standpoint." ECF No. 11 at PageID#: 414; *see Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988); *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89 n.1 (6th Cir. 1985). He argued that, even in the absence of medical records observing his arm amputation and other ailments dated *between* September 15, 2011, and March 31, 2012, he satisfied his "severe impairment" burden by demonstrating medical records from *before* and *after* that time period, in 2000 and again in 2014. ECF No. 11 at PageID#: 414-15.

The magistrate judge recommends affirming the ALJ's decision. ECF No. 13. Plaintiff objected, ECF No. 14, and Defendant filed a response, ECF No. 15.

### III. Medical Evidence and Analysis

The magistrate judge recommends affirming the ALJ's decision on two grounds: first, the Court should only consider medical evidence dated between or around the purported onset of the disability (September 15, 2011), and the date the claimant was last insured (March 31, 2012); and second, even if the Court were to observe the *fact* of impairment diagnoses outside that date

5

(5:17cv2489)

range, those diagnoses alone are not relevant to the Step-Two inquiry absent some qualitative indication of the *severity* of the given impairment or impairments. ECF No. 13 at PageID#: 439-41. Applying that rationale, the magistrate judge determined that Plaintiff had presented no evidence to prove that he suffered from a severe impairment between September 15, 2011, the alleged onset date of disability, and March 31, 2012, when his insurance coverage expired.

### A. Evidence Outside the Relevant Date Range

Plaintiff argued that, despite the 14-year gap in his medical records, the ALJ should have considered medical evidence from before and after that gap and drawn reasonable inferences about Plaintiff's medical condition between September 15, 2011, and March 31, 2012. ECF No. 11 at PageID#: 410-12. The magistrate judge rejected that position, concluding that the onset date of Plaintiff's alleged impairment was not easily inferred from prior and subsequent medical evidence. ECF No. 13 at PageID#: 439-40. Plaintiff did not object to that conclusion, *see* ECF No. 14, and the Court, therefore, is not obligated to review it. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b). Nevertheless, it bears discussion.

To qualify for disability insurance benefits, a claimant must be "insured for disability insurance benefits." 42 U.S.C. § 423(a)(1)(A), 423(c)(1). A claimant's "insured status" depends on a ratio of accumulated "quarters of coverage" to total quarters. 42 U.S.C. § 423(c)(1)(B). "Quarters of coverage" include quarters in which the applicant earned certain amounts of wages or self-employment income. 20 C.F.R. §§ 404.101(b), 404.140-146. Plaintiff, who claims to have become disabled after reaching age 31, would be insured in a particular quarter only if he had accumulated 20 "quarters of coverage" over the course of a 40-quarter period ending with

6

(5:17cv2489)

that particular quarter. *See* 20 C.F.R. § 404.130(b). Thus, to qualify for disability insurance benefits, a claimant must establish that his disability began prior to the expiration of his disability insurance coverage. Pursuant to 42 U.S.C. § 423(a)(1)(A) and (c)(1), and based on his work history, Plaintiff was insured through March 31, 2012. ECF No. 10 at PageID#: 244.

In 1992, part of Plaintiff's left arm was amputated after it was caught in a machine. *Id.* at PageID#: 323. Medical evidence of that amputation was recorded in September 1993, *id.* at PageID#: 329, and again in subsequent medical examinations. *Id.* at PageID#: 323, 330, 340, 352, 361, 375, 379. Plaintiff apparently did not visit a physician between the years 2000 and 2014.

At many of the same medical visits identifying his arm amputation, Plaintiff was diagnosed with degenerative joint disease (or "osteoarthritis") and degenerative disc disease. Such medical observations and diagnoses were made in September 1993 (degenerative joint disease, *id.* at PageID#: 329), January 1998 (degenerative joint disease, *id.* at PageID#: 325, 333), January 1999 (degenerative joint disease, *id.* at PageID#: 319), March 2014 (osteoarthritis, *id.* at PageID#: 344), February 2015 (degenerative disc disease, *id.* at PageID#: 379-80), and August 2016 (osteoarthritis and degeneration of lumbar discs, *id.* at PageID#: 362, 408).

In his initial application for disability insurance benefits, Plaintiff asserted that his disability commenced on January 1, 2013. *Id.* at PageID#: 224. He later amended his application, however, to reflect that his disability commenced on September 15, 2011. *Id.* at PageID#: 241. In 2011, Plaintiff was working as a landscaper. *Id.* at PageID#: 78. At his hearing before the ALJ, he did not explain precisely what about his health had changed in

(5:17cv2489)

September 2011, but he explained that, by that point, he "wasn't able to lift anything up above my chest. My back, my neck, my shoulders aching every day, arthritis. . . . [M]y boss asked me to possibly find other suitable work. I wasn't able to keep up." *Id.* at PageID#: 79. He explained that the left arm amputation exacerbated his other conditions because

> I had to start using, find different ways to do things without having my left hand. So consequently, I was using the right side of my body a lot more, and it started getting hard and harder to do. . . . With the arthritis and my back and my neck, everything has just been a lot harder to do and it got to the point where I can't do anything anymore.

*Id.* at PageID#: 79-80. He also explained that, starting around 2011, his back had deteriorated to the point that the pain was intolerable: "I would just start getting numbness and tingling down the back of my legs and just excruciating pain through my back down." *Id.* at PageID#: 81.

The ALJ determined that Plaintiff had not satisfied his burden to establish, at Step Two of the disability-benefits analysis, that he had a severe impairment or severe combination of impairments prior to the expiration of his insurance coverage in March 2012. *Id.* at PageID#: 69-70. The ALJ drew that conclusion despite Plaintiff's hearing testimony, reasoning that he had "only the claimant's statements as evidence" and "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" beginning in September 2011. *Id.* at PageID#: 70. Even if then-current medical records reflected that Plaintiff was severely impaired, the ALJ determined that there was no available evidence from which to conclude that the onset of that impairment (that is, the point at which he became unable to perform his work) occurred in September 2011 rather than, for instance, January 2013, as Plaintiff had initially claimed. *See id.* at PageID#: 241.

(5:17cv2489)

Plaintiff's arm amputation (1992) and degenerative joint disease (first documented 1993) pre-date the alleged onset of his disability (2011). The existence of those conditions, standing alone, does not establish that Plaintiff was severely impaired. The combination of conditions, of course, might have worsened to the point of a severe impairment some time between 1993 and 2012, but the ALJ appropriately determined that there were no "medical signs [or] laboratory findings" suggesting that Plaintiff's condition had considerably worsened prior to March 31, 2012. *See id.* at PageID#: 69-70; 20 C.F.R. § 404.1528(a) (since removed and reserved; *see* 82 Fed. Reg. 5871); SSR 96-4p(2) (since rescinded because duplicative of SSR 16-3p).

"[S]tatements alone are not enough to establish that there is a physical . . . impairment." 20 C.F.R. § 404.1528(a) (since removed and reserved; *see* 82 Fed. Reg. 5871). Rather, an impairment must be shown by "medical signs and laboratory findings." *Id.*; SSR 96-4p(2) (since rescinded because duplicative of SSR 16-3p). It was not sufficient, therefore, for Plaintiff to testify at the hearing that "everything has just been a lot harder to do," ECF No. 10 at PageID#: 79-80, and "I would just start getting numbness and tingling down the back of my legs and just excruciating pain through my back down," *id.* at PageID#: 81.

To carry his burden at Step Two, Plaintiff did not necessarily need a medical record indicating his impairment that was dated between September 15, 2011, and March 31, 2012. Surrounding medical evidence, in theory, can help a factfinder draw inferences about one's likely condition on a relevant date. *See Begley v. Mathews*, 544 F.2d 1345 (6th Cir. 1976). But in Plaintiff's case, there is simply no evidence available to prove his (amended) assertion that his severe impairment commenced prior to March 31, 2012, as opposed to some later date after his

9

(5:17cv2489)

disability insurance coverage had already expired.

Substantial evidence supports the ALJ's conclusion that the medical evidence in the record could not support Plaintiff's claim that he had been severely impaired since September 15, 2011.

**B. Inferring Severity from the Diagnosis Itself**

The magistrate judge also observed that "the mere diagnosis of an impairment says nothing about the severity of that impairment." ECF No. 13 at PageID#: 440-41 (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Kutscher v. Comm'r of Social Security*, 2014 WL 3895220, at *13 (N.D. Ohio Aug. 8, 2014)). As a result, the magistrate judge reports, even if the Court is convinced that Plaintiff's degenerative joint disease and arm amputation should be recognized as an impairment, Plaintiff nonetheless fails at Step Two of the disability-benefits analysis because there is no evidence that his impairment was "severe." *See* ECF No. 13 at PageID#: 440-41.

In his Objection, Plaintiff points out that the magistrate judge's reasoning does not apply to an arm amputation. ECF No. 14. A person may suffer from mild arthritis or mild dysthimia, for example, but there is no such thing as a mild arm amputation. *See id.* The fact of the amputation, he argues, necessarily also indicates the severity of his condition.[1]

Plaintiff's Objection, however, is largely irrelevant to the magistrate judge's conclusion.

---

[1] Nevertheless, in his Objection, Plaintiff refers to legal authority that distinguishes an amputation below the elbow and articulates the requirement that a claimant with such an amputation, like Plaintiff, is subject to a more detailed evaluation of functional ability. ECF No. 14 at Page ID#: 444.

10

(5:17cv2489)

Plaintiff focuses narrowly on his arm amputation and ignores his other condition, degenerative joint disease.  But in his benefits application and subsequent argument before the ALJ, Plaintiff never suggested that his arm amputation *by itself* gave rise to his claim for disability insurance benefits.  If it had, then presumably he would have applied for disability insurance benefits back in 1992 or 1993.  Degenerative joint disease was, at all times, front and center in Plaintiff's claim for benefits.  And degenerative joint disease (also known as "osteoarthritis") is precisely the kind of condition that may be diagnosable but not severe, giving rise to a "severe impairment" only after a long period of deterioration.

Without medical records produced during or around the relevant date range, there is insufficient evidence from which to infer that Plaintiff began suffering from a severe impairment prior to the expiration of his disability insurance coverage.  The ALJ's finding was supported by substantial evidence.

## IV.  Conclusion

For the foregoing reasons, the Court adopts the Report and Recommendation of the Magistrate Judge, and rules that the ALJ applied the correct legal standards and that his conclusion was supported by substantial evidence.  Judgment will be entered in favor of Defendant.

IT IS SO ORDERED.

| February 12, 2019 | */s/ Benita Y. Pearson* |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |

11